# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 17cr917-BEN |
|---|---|
| Plaintiff, | |
| vs. | **ORDER DENYING MOTIONS TO DISMISS INFORMATION** |
| JUAN HERNANDEZ-GAMEZ, | [Dkt. Nos. 45 & 47] |
| Defendant. | |

Now before the Court are Defendant's Motions to Dismiss the Information. The underlying removal order was valid and the citizenship and alienage laws applyied to Defendant are constitutional. Therefore, the motions to dismiss the Information are denied.

## I. BACKGROUND

Hernandez-Gamez is charged with the crime of Attempted Reentry of a Removed Alien in violation of 8 U.S.C. § 1326(a) and (b). Hernandez-Gamez is a citizen of Mexico. It does not appear that he has ever enjoyed lawful permanent resident status ("LPR") in the United States. He is alleged to have first entered the United States without inspection sometime in June 2000. While here, he committed a federal firearm offense. Based on that offense he was deemed to be an aggravated felon and removed from the United States upon his release from federal prison. In March 2017, he was apprehended again entering, attempting to enter, or being found in the United States at the international border.

- 1 -

## II. CHALLENGING THE UNDERLYING REMOVAL ORDER

Today, nine years later, Defendant improbably argues the current criminal charge may not rely on the 2008 removal because the 2008 removal in turn, should not have been based on his federal firearm conviction. He attacks the 2008 federal firearm conviction because he now says he was not advised by his attorney of the immigration consequences of pleading guilty to the federal firearm offense. He says that he did not contest or appeal the charge at the removal hearing because he did not understand English. Defendant's unorthodox argument, that he may pose a hypothetical collateral attack on his old criminal conviction, rather than directly attacking his removal order, is not supported by caselaw and does not stay with the bounds of § 1326(d).

On February 12, 2007, Defendant was arrested and charged with the crime of possession of a firearm by an illegal alien. He pleaded guilty to both being an illegal alien and possessing a gun, *i.e.*, a violation of 18 U.S.C. § 922(g)(5). He was convicted on March 8, 2008 and sentenced to 13 months in prison. Defendant was removed from the United States later in 2008 based upon proceedings that began with an April 4, 2008 Notice of Intent to Issue a Final Administrative Removal Order. The Notice alleged that Defendant had been convicted of a violation of 18 U.S.C. § 922(g)(5). It charged him with being a removable alien who is not a permanent resident under 8 U.S.C. § 1228(b), through 8 U.S.C. § 1227(a)(2)(A)(iii). The Notice was based upon his conviction qualifying as an aggravated felony under 8 U.S.C. § 1101(a)(43)(E). At the time of the hearing, Defendant declined to contest the charge or seek review. He requested immediate removal to Mexico, rather than wait 14 days in custody for the removal order to become final.

Hernandez-Gamez now moves to dismiss the Information. His collateral attack is based upon 8 U.S.C. § 1326(d). He argues that his removal order in 2008 was fundamentally unfair. The 2008 order was an expedited removal order under

8 U.S.C. § 1228(b).[1] *United States v. Hernandez-Vermudez*, 356 F.3d 1011, 1013-1015 (9th Cir. 2004) (holding expedited administrative removal set out in §1228(b) applies to aliens who were not lawfully admitted for permanent residence or paroled and who entered the United States without inspection).

An individual charged with illegal reentry under 8 U.S.C. § 1326 has a right to challenge the removal that underlies the criminal reentry charge. The criminal charge may be dismissed if all three prongs of §1326(d) are satisfied.

> Section 1326(d) . . . . authorizes collateral attack on three conditions: (1) that the defendant exhausted available administrative remedies; (2) that the removal proceedings deprived the alien of the opportunity for judicial review; and (3) that the removal order was fundamentally unfair. Removal is fundamentally unfair, in turn, if (1) a defendant's due process rights were violated by defects in his underlying removal proceeding, and (2) he suffered prejudice as a result of the defects.

*United States v. Garcia-Santana*, 774 F.3d 528, 532-33 (9th Cir. 2014) (internal quotation marks and citations omitted). "To satisfy the third prong — that the order was fundamentally unfair — *the defendant bears the burden* of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201-02 (9th Cir. 2014) (citation omitted) (emphasis added). In the case at bar, the Defendant clearly has not carried his burden on the third prong. He argues that had he understood his immigration rights, he would have sought to unwind his criminal conviction. He would have returned to federal court and moved to vacate his guilty plea and thus eliminated the underlying criminal conviction.

---

[1] "Under 8 U.S.C. § 1228, the government may place an undocumented alien convicted of an aggravated felony either into removal proceedings before an Immigration Judge or into administrative removal proceedings before an ICE agent." *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 759 (9th Cir. 2015); *see also United States v. Hernandez–Vermudez*, 356 F.3d 1101 (9th Cir. 2004) (holding expedited administrative removal set out in § 1228(b) applies to aliens who were not lawfully admitted for permanent residence or paroled and who entered the United States without inspection).

- 3 -

There are some problems with this contention. First, § 1326(d) does not provide an avenue to collaterally attack a prior criminal conviction. Defendant's 2008 federal firearm offense conviction in case number 07cr188-NCT in the United States District Court for the Middle District of North Carolina was affirmed on appeal in Fourth Circuit Court of Appeals (Appeal Number 08-4329) and remains a valid conviction. The time for collaterally attacking that conviction under 28 U.S.C. § 2255 has long since passed.

Second, it is not at all clear how Defendant would have successfully moved to vacate his guilty plea in that case even if he had attempted to do so nine years ago. The Fourth Circuit Court of Appeals summarized the facts of Defendant's offense:

> At about one o'clock in the morning, Officer Barry Crump stopped a car driven by Gamez in a high-crime area because the officer noticed that Gamez was not wearing a seat belt and because the rear tag light was out. There was a passenger in the vehicle with Gamez. Crump ascertained from his patrol vehicle computer that the North Carolina Division of Motor Vehicles had permanently suspended Gamez's driver's license, which required Crump to seize the license. The computer also alerted Crump of previous narcotic activity by Gamez.
>
> . . .
>
> Although Gamez now asserts that his primary language is Spanish, Crump and Gamez conversed entirely in English, with no apparent need for a translator. Crump handed Gamez the citation and informed him that the officer had permanently seized Gamez's suspended license. Crump then informed Gamez that he was free to go, but could not drive away without a license, to which Gamez replied, "Okay."
>
> After about a one-second pause, Crump asked Gamez if he had any contraband in the vehicle. Gamez replied in the negative and then assented to Crump's request to search the vehicle. Crump asked Gamez and his passenger to stand by the rear of the vehicle during the search. Assisted by the K-9 officer and his dog, Crump found a loaded nine-millimeter handgun in the rear map pocket of the front passenger's seat, along with several thousand dollars in cash in the center console of the car. Gamez admitted that he owned the gun.

*United States v. Gamez*, slip op., Appeal No. 08-4329, 2-3 (4th Cir. Feb 19, 2009). Defendant pleaded guilty to the charge in the District Court. During the plea colloquy, the District Court advised Defendant that he would likely be deported as a

- 4 -

result of the conviction.  During the colloquy, counsel for the defense conceded, "[w]e agree that Mr. Gamez was at the moment the officer stopped him in constructive possession and had up to that point, at some point in the past had been in actual possession of the gun.  We agree he was here illegally.  We agree the gun was manufactured outside the United States and it was later test-fired and it was found operable." Transcript at 91.  The District Court advised Defendant:

> THE COURT: Since you will probably be deported, the only special condition of supervised release in your case would be not to re-enter the United States during that period of supervised release, unless you first get permission to re-enter from the Secretary of Homeland Security.
>
> THE DEFENDANT: Yes.
>
> THE COURT: But that does not mean that you would be able to re-enter the United States without first getting permission after that period of supervised release has expired.  There is a statute or a law of the United States which prohibits anybody who has been deported from re-entering the United States without first getting the appropriate permission to do so, and provides criminal penalties and terms of imprisonment for people who do that.  The ultimate effect of that would be, if you came back within the three years of supervised release, [you] would be facing prosecution under the statute and a prison sentence, and a prison sentence under violations of supervised release, and you would have to serve each of those terms of imprisonment separately.  You would have to serve one and complete that service before you would start serving the second.  Is that your understanding?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Any questions at all about that?
>
> THE DEFENDANT: No.

*Change of Plea Hearing* (Aug. 9, 2007) transcript at 81-82.  Defendant was told that he would probably be deported and he indicated that he understood.  It would be another three years before the Supreme Court would decide that a criminal defense attorney needs to advise a client of the immigration consequences of a guilty plea.  *See Padilla v. Kentucky*, 130 S. Ct. 1473 (2010).

Defendant's federal § 922(g)(5) conviction is solid and final.  The removal order based on that aggravated felony conviction is likewise solid and unassailable because § 922(g)(5) convictions are specifically listed in the Immigration and

Nationalization Act's definition of an aggravated felony.  *See* 8 U.S.C. § 1101(a)(43)(E)(ii).  Because it is an enumerated aggravated felony, no *Taylor* analysis is necessary.  An alien facing removal based upon an aggravated felony conviction is ineligible for discretionary relief.  *See* 8 U.S.C. § 1228(b)(5).

Since the 2008 removal order was based on a correctly classified aggravated felony conviction, the order was fundamentally fair.  Defendant's § 1326(d) collateral attack fails and the motion to dismiss is denied.

### III. CHALLENGING THE CONSTITUTIONALITY OF THE CITIZENSHIP STATUTES

Defendant also moves to dismiss based upon an argument that the citizenship statutes are unconstitutional.  This also is an unorthodox argument and the argument is not persuasive.

Defendant's argument relies on the recent decision of *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (June 12, 2017).  Defendant asserts that *Sessions* decided that the citizenship laws of the United States facially violate the Fifth Amendment equal protection clause.  Defendant asserts that to be guilty of violating § 1326, one must be a previously removed alien.  Defendant then asserts that *Sessions* invalidates all laws of the United States pertaining to the definition of citizenship and alienage.  With this syllogism, Defendant concludes that if the definition of an alien is unconstitutional, he cannot be deemed an alien, and if he cannot be deemed an alien, he cannot be found guilty of being an alien entering, attempting to enter, or being found in the United States after having been previously removed.  The argument stretches *Sessions* too far.

*Sessions* concerned the law regarding derivative citizenship under 8 U.S.C. §§ 1407(a) and 1409(c).  Defendant here makes no claim that he should be accorded derivative citizenship.  He makes no claim that a parent was a United States citizen.  He makes no claim of that sort at all.  He simply swings *Sessions* as a blunderbuss at the entire structure of laws concerning citizenship and alienage.  To use

Defendant's words, "[*Sessions v.*] *Morales-Santana*'s substantive holding that the citizenship laws facially violate equal protection means Mr. Hernandez-Gamez cannot be convicted of a crime where being 'not a citizen' is an element of the offense." The argument places too much weight on the *Sessions* decision. The Supreme Court does not describe its decision as applying to provisions beyond those defining derivative citizenship. It says nothing about § 1326. It says nothing about § 922(g)(5). It says noting about § 1101(a)(3). Defendant leans too heavily on the finding of unconstitutionality pinpointed in *Sessions,* and the support fails to hold. No decisions have yet been identified by Defendant adopting his argument.

Defendant does not assert he is a United States citizen. To the contrary, during his 2008 felony plea colloquy he admitted to being an alien. *Sessions* does not change his alienage, nor does it require dismissal of the § 1326 charges.

### IV. CONCLUSION

Having concluded that the 2008 removal order supports the § 1326 charge, and having conducted some meaningful review of the expedited removal order, the Court finds that the order was not fundamentally unfair. Moreover, Defendant is properly charged as an alien in violation of § 1326, notwithstanding the Supreme Court's decision regarding the derivative citizenship statutes. The motions to dismiss the Information are hereby denied.

DATED: September 18, 2017

_____
Hon. Roger T. Benitez
United States District Judge