# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 17cr917-BEN |
|---|---|
| Plaintiff, vs. | ORDER DENYING MOTIONS TO SUPPRESS STATEMENTS |
| JUAN HERNANDEZ-GAMEZ, Defendant. | [Dkt. Nos. 33 & 39] |

Now before the Court are Defendant's motions to suppress. The motions are denied.

## BACKGROUND

Hernandez-Gamez is charged with the crime of attempted reentry into the United States of America of a removed alien in violation of 8 U.S.C. § 1326(a) and (b). Hernandez-Gamez is a citizen of Mexico. Defendant files two motions to suppress statements he made in custody.

In his motion filed May 17, 2017 (Dkt. No. 33), he makes claims that are not supported by a sworn declaration.[1] Consequently, no evidentiary hearing is necessary. First, he argues that he answered questions prior to receiving *Miranda* warnings and that these answers should be suppressed. The interrogation was videotaped. Defendant said he understood Spanish and the interrogation was conducted in Spanish. A limited number of questions were asked by agents in the

---

[1] Southern District of California Local Rule 47.1(g)(1) requires a declaration. "Criminal motions requiring a predicate factual finding must be supported by declaration(s) . . . . The court need not grant an evidentiary hearing where either party fails to properly support its motion or opposition."
A trial court has discretion to deny a motion to suppress without an evidentiary hearing if a defendant fails to support the motion with specific facts. *United States v. Herrera-Rivera,* 832 F.3d 1166, 1170 (9th Cir. 2016).

interrogation room about biographical information (including birthplace and country of citizenship) prior to the *Miranda* warnings. Questions seeking routine biographical booking information need not wait for *Miranda* warnings. *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990). Only routine booking questions were asked here.

Next, he argues that despite *Miranda* warnings being given, Defendant did not believe he had a choice about whether to continue talking. As a result, his waivers were involuntary and unintelligent. His contention is belied by the interrogation video and the totality of the circumstances.

*Miranda* warnings were given. Defendant gave his assent and signed his name on a form in Spanish advising him of his rights. He was told unambiguously that he could remain silent. He was told unambiguously that he could request counsel. He was told unambiguously that he could stop answering questions at any time. There is no indication that his waiver was involuntary. When asked if he understood his rights, Defendant said he wanted to answer questions. He stated, "I am willing to give a statement and to answer the questions. At this time I do not wish to have an attorney. I understand and I am aware of what I am doing . . . ." He indicated that he understood what he just said. He summarized the meaning of his words as follows: "Well, that you are not pressuring me, or anything. That I am giving my statement because I want to."

No verbal threats were made. No demeaning comments or implied threats were heard. The two agents were not wearing exposed weapons. Defendant said nothing about being hungry, thirsty, or experiencing physical or mental discomfort. Defendant appeared to be comfortably dressed. There is no indication that Defendant's waiver was the product of intimidation, coercion, or deception. *Moran v. Burbine*, 475 U.S. 412, 421-22 (1986) ("Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to

use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.").

Additionally, by answering questions thereafter, Defendant obviously impliedly waived his right to remain silent. Implied waivers are also acceptable. "*Miranda* may be waived expressly or implicitly. *Berhuis* [*v. Thompson*, 560 U.S. 370 (2010)] makes clear that an implicit waiver of *Miranda* may be shown where (1) the accused is provided with the *Miranda* warnings; (2) the accused understands those advisements; and (3) the accused makes uncoerced statements. 'As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford.'" *United States v. Meza*, No. 15cr3175 JM, 2016 WL 4479396, at *5 (S.D. Cal. Aug. 25, 2016) (quoting *Berhuis*, 560 U.S. at 385). Here, Defendant both explicitly and impliedly waived his rights.

During the interrogation Defendant appeared alert and clear. He answered questions cogently, directly, and to the point. He clearly understood what was being asked. Considering the totality of the circumstances, there is nothing to indicate that Defendant's will was overborne or that he was at that time suffering from a malady. Defendant's answers during the interrogation were voluntary and uncoerced. His right to remain silent was intelligently and unambiguously waived.

The motion to suppress statements filed May 16, 2017 is denied.

In his motion filed June 6, 2017 (Dkt. No. 39), he makes similar claims together with a sworn declaration signed by him on May 25, 2017. The claims are again belied by the videotape of the interrogation. As before, Defendant argues that answers to pre-*Miranda* questions should be suppressed. For the reasons described above, the questions asked were routine booking questions of a biographical nature. Defendant's rights were not violated and suppression is not a remedy.

He argues, as before, that his waiver was invalid. Once again, the videotape

shows Defendant intelligently and voluntarily deciding to answer questions without being tricked or coerced. The agents did not undercut or undermine the meaning or nature of the rights described to Defendant. Defendant argues that agents used a two-step process whereby they asked about his citizenship pre-*Miranda* and about that and other elements of the offense post-*Miranda*. But the pre-*Miranda* questions were limited to routine booking biographical questions. The routine booking question of alienage is one element of the offense of attempted reentry after removal, with which Defendant was charged. However, questioning about the other elements of the offense go beyond routine booking questions and agents made no inquiries until after *Miranda* warnings were given and rights were waived.

Defendant also criticizes the agent's answer about the difference between asking for a lawyer and not asking for a lawyer. The agent answered that the *process* is the same and that the difference is that Defendant would either answer questions or wait for an attorney. While the agent could have been more detailed, he was not misleading. For example, the agent did not say the Defendant would get off easy if he talked but would have a harsh sentencing judge if he demanded a lawyer. He said the *process* would be the same, except that there would be waiting if Defendant wanted an attorney. This was neither misleading nor an intentional "misdirection."

Lastly, the Defendant claims that he was cognitively impaired from paint fumes and carbon monoxide in automobile exhaust when he was interrogated. He asserts that because he spent two hours inside the manufactured floor compartment of the 2005 Ford Focus automobile he was impaired from inhaling both paint fumes and exhaust. He points to the agents report describing a strong odor of paint. One agent did report smelling a strong odor of paint but reported nothing about an exhaust odor. Defendant claims that most of the air entering his hidden

compartment was exhaust which left him with a sore throat.[2] Defendant also claims that he was light-headed, dizzy, and suffering a headache when he was removed from the automobile.

It was about 8:40 p.m. when the agents discovered the automobile holding Defendant in a hidden compartment. Between his discovery/removal and his interrogation, approximately six hours passed. At about 2:55 a.m., Defendant was given *Miranda* warnings and questioned. The agent recorded in his report that, "prior to the advisement of Miranda D3 [Hernandez-Gamez] was questioned regarding his health, drug and alcohol use (for detention and booking purposes). D3 [Hernandez-Gamez] was lucid and did not appear to be ill, intoxicated or under the influence of drugs. D3 [Hernandez-Gamez] did offer rational responses to questions asked of him."

The video recording of the interrogation also shows Defendant was lucid, responsive, clear, and cogent. His arms appear stiff at the outset of the interview, but he does not appear to be ill. He appears to be somewhat tired. Defendant does not complain to the agents about feeling tired, ill, dizzy, confused, short of breath, or slow of thought. His answers are direct and timely. He maintains good eye contact with the questioning agents. He does not appear to be suffering from blurry vision or unusually poor memory. Considering the totality of the circumstances, Defendant intelligently and voluntarily waived his *Miranda* rights and freely answered interrogation questions. Therefore, the motion to suppress statements filed June 6, 2017 is likewise denied.

DATED: November 6, 2017

_____
Hon. Roger T. Benitez
United States District Judge

---

[2] That all of the inhaled exhaust contained carbon monoxide is simply assumed to be the case by Defendant. It is not necessarily the case (because modern automobiles employ catalytic converters to convert most carbon monoxide from engine exhaust into non-toxic carbon dioxide.)